Good morning. May it please the court. My name is Evan Greenberg. I represent the appellant Eddie Lee Franklin. Thank you for the reminder about watching my own clock. I am planning to reserve two minutes of my time for rebuttal. Mr. Franklin received ineffective assistance of counsel when his trial attorney stipulated that he qualified for a career offender designation based on two California convictions that did not qualify as career offender predicates. Now, Mr. Greenberg, at the time the stipulation was entered into, was the law clear that the controlled substance convictions in California included conduct which did not fit within the generic elements of a federal controlled substance act? Because this is a habeas case, not a direct appeal, right? That's correct. So the California convictions at issue do extend to conduct that's not covered by the Controlled Substances Act. Because of the difference between the counterfeit requirement in the federal legislation and the in lieu requirement in the California legislation. That might be correct. The Federal Controlled Substances Act applies to offenses that actually involve controlled substances and that's what they mean by controlled substances or that involves mislabeled controlled substances which are the counterfeit controlled substances. And the state offenses don't involve any controlled substances at all. And that's exactly what happened in Mr. Franklin's case. Here the stipulation was before we got certain directions on what statutes are divisible and what statutes are indivisible or are non-divisible under desk camps. Does that affect the issue of whether there was defective performance under the effective system of counsel? We don't think so, Your Honor, because the California statute at issue applies only when there is no controlled substance. It's an offer to deliver a controlled substance and then the delivery of something else in lieu of that. So there's no way to look at the elements of the California statute and assess whether it's divisible because it never involves a controlled substance. So it would never fall within. Well, if the counterfeit controlled substance didn't involve any controlled substance either. No, Your Honor. Under the Controlled Substances Act, a counterfeit substance does involve a controlled substance. It's one that's mislabeled. For example, if someone's creating, producing their own insulin. It may be mislabeled cocaine, but it's still an aspirin. No, Your Honor, that's not correct. Under the federal definition entitled 21-8027, a counterfeit substance is defined as a controlled substance that is mislabeled. So in your example, the aspirin that's labeled cocaine is not a counterfeit substance under federal law. And also that term, counterfeit substance, is a term of art that under the Federal Controlled Substances Act, under the Uniform Controlled Substances Act, under California law, and according to Judge Dennis' dissent and Crittenden, adopted by all 50 states, the term counterfeit substance always means a controlled substance that's mislabeled to misrepresent the manufacturer. The only instance in which counterfeit substance means anything else is in the other circuits that have decided this question against us. But uniformly, apart from there, counterfeit substance always involves an actual controlled substance. And if you look at the original version of the career offender guideline, it said that a controlled substance offense involves violations of various statutes. And the very first one listed was Title 21 U.S.C. 841. And 841A refers to both controlled substances and counterfeit substances. So when Congress enacted, I'm sorry, when the commission drafted the career offender guideline, they did it to implement Congress' directive to ratchet up penalties for violations of 841. So the commission simply mirrored and adopted the language from the Controlled Substances Act. The Controlled Substances Act refers to controlled substances and counterfeit substances, and the guideline refers to that same thing. And then a few years after the guideline was first adopted, the commission amended it to adopt the current definition, but did so only to clarify the law. So the current definition where it reads counterfeits controlled substance or counterfeit substance was meant to clarify the earlier reference to the specific provisions of federal law, the Controlled Substances Act. And let's talk about the defective performance prong of ineffective assistance of counsel. We'll leave prejudice for one side. Was it ineffective assistance of counsel was a defective performance for counsel not to have known this distinction? Absolutely, Your Honor. Were there any cases which he should, which had explained this or adumbrated it? Yes. Before counsel entered the, before they entered the plea agreement, the probation prepared a plea pre-report that cited these cases that, I believe it was that cited Judge Dennis' dissent in Crittenton, where he laid out the compelling argument that the guidelines effectively adopted the Controlled Substances Act definition. He also laid out the compelling argument that counterfeit substance is a well-known term of art. So it's not a scenario where you should apply the dictionary definition because it's not, it's not a, it's not a phrase commonly used. It's a term of art when it comes to controlled substance. Was the total advisement of what the law was the dissent by Judge Dennis in Crittenton? No, it also cited Evans. And Evans was a case that if you read it, it's only a half-page per curiam opinion. It doesn't really specify what the conviction at issue is. But it did, the Evans opinion did cite Fraser from the 11th Circuit in which District Judge, I'm sorry, Circuit Judge Godbold laid out the arguments for why the Florida in lieu of statute or simulated statute didn't qualify. So before he entered the plea, he was given notice that this is an open question in the 9th Circuit and that other judges have disagreed. And to the extent, you know, counsel had he read those, he would have had a strong argument for the court to adopt the persuasive arguments from the other dissents or at the very least to apply the rule of lenity. Because these split decisions from other circuits suggest that there's some ambiguity. And one of the cases that the government cites is Hudson, the 7th Circuit in 2010, another case that decided against us. But the court there acknowledged that there's ambiguity. It said, for all we know, the commission intended to adopt the Controlled Substance Act's definition of counterfeit substance. And then it just didn't say anything about applying the rule of lenity. But if there's any ambiguity about whether counterfeit substance should adopt the plain language meaning and the dictionary, as some of these cases have, or the definition in federal law, state law, the Uniform Controlled Substances Act, the rule of lenity requires adopting the defendant-friendly interpretation. The sum and substance of your argument, as I see it, is, number one, it was an open question in the 9th Circuit. But he had some authority, as cited in the probation report, that it had been decided the other way in other circuits. Now, why is this defective performance? It's defective performance. One, if you look at the law, Tilcock v. Budge said that it's defective performance to stipulate to a sentencing enhancement based on predicate offenses that simply don't qualify you for it. Is there any strategic reason for him to stipulate rather than not stipulate? No. Tilcock v. Budge said there's nothing strategic about that. We contend it's not a strategic decision as a matter of law. And apart from that, on the facts, his entire sentencing presentation was about trying to unwind the effect of entering the stipulation in the first place. He focused all of his attention before the district court and on appeal on getting away from the stipulation that he entered, which caused him to have to make that argument in the first place. And I'd like to reserve the rest of my time. We'll give you two minutes. Okay. Thank you. Go ahead. Good morning. May it please the court. My name is Anil Antony, and I represent the United States in this matter. The question before the court is whether there are grounds to affirm the district court's decision denying defendant's 2255 motion. The district court decided after reviewing the record, the entire record, that defendant had not met his burden, his burden of overcoming the strong presumption that his counsel provided competent representation. In other words, the district court determined that defendant didn't overcome the strong presumption that defense counsel made an objectively reasonable strategic decision. In not contesting defendant's career offender status as a matter of law, and instead choosing to contest it as a matter of fact by minimizing the significance of defendant's predicate offenses and contextualizing defendant's criminal history, when the case law that defense counsel knew at the time was overwhelmingly against the defendant. Defendant's counsel today argues that the defense attorney was trying to walk away from the strategic decision that he made at the plea negotiation stage. But there's no evidence of that, and everything indicates that defense counsel and the strong presumption that the district court employed suggests that the defense counsel made a strategic determination that the best course of action in light of defendant's extreme criminal history was to try and contextualize that criminal history for the district court. Explain how the record was developed at the district court with regard to this strategic decision that was made. If your Honor's question is about whether, is about the record at sentencing, there's clear, what's clear on the record is that defense counsel knew from the plea report, excuse me, the pre-plea report, defendant's extensive list of criminal history. A criminal history that included 12 adult criminal convictions, 27 additional arrests, that's 40 contacts with law enforcement entities in a 20-year period, resulting in 21 criminal history points. That's an astounding number, one that almost doubly qualified him as criminal history category six. As defense counsel here pointed out, defendant's counsel at sentencing and during plea negotiations also was aware about the case law that was against his client's position. The case law was solidly against his client's position. In fact, no case at that point and no case to date has decided to apply the CSA's definition of counterfeit substance to the career offender provisions. In terms of the record, that is what defense counsel knew at the time of sentencing. This court and the district court must employ a strong presumption that defense counsel performed reasonably. That strong presumption means that the court has to assume that defense counsel performed with reasonable competence. A reasonable attorney in that situation would research the law. A reasonable attorney would consider those facts, and that is the presumption the defendant has to overturn here. Well, you're drawing inferences from that sentencing hearing. I guess the question would be at the 2255 stage at the district court, should an evidentiary hearing have been held to develop the record with respect to the decision making of his defense counsel? The record could be further developed, Your Honor. That's certainly true. The court certainly could remand to the district court to do an evidentiary hearing, but we don't believe that that's necessary here. There's basically two reasons that we see the court could approach this. The first is a technical approach. The second is a more practical approach. Under the technical approach, yes, we agree that the record could be developed further. We believe that there may be some open evidentiary questions, such as the nature of defense counsel's stipulation. As the defendant has repeatedly pointed out in his briefing, he calls it a stipulation. The record indicates that, and the plea agreement indicates that, it was a reasoned decision to enter into the plea agreement. It wasn't a stipulation by defense counsel. It was an agreement by the defendant upon recommendation of his counsel. That's what's in the plea agreement. But under that technical approach, I believe that there could be a remand for a further evidentiary hearing, but I think that we'll end up at the same point as under a practical approach. What would be investigated by a further evidentiary hearing? Your Honor, defendant suggests that there may be some open questions in his reply brief. We don't believe that the court needs to answer those open questions because we believe under a practical approach, the case law is solidly against the defendant, so as a matter of law, his counsel's performance couldn't have been deficient. Second, even looking at the record as it stands now, as the district court reviewed it, the record is sufficient to conclude that defense counsel performed reasonably and defendant hasn't done anything to overturn that strong presumption. Well, he mentioned at least three cases that were mentioned in the PSR, Quittenden, Evans, and Fraser. Your Honor, you say that the law was clear that so the defense counsel was stipulating to a clear statement of law. Why do you say that? Well, just to be clear, Your Honor, the government's position isn't that the law was clear. There certainly was no Ninth Circuit case directly on point. That being said, the law was overwhelmingly against the defendant's position, so it wasn't unreasonable for defense counsel to make the strategic decision that rather than making an argument that would ring hollow to the district court, to instead agree that defendant was a career offender legally for the purposes of the career offender guidelines, but then argue it factually. It's important to point out that defendant's counsel was successful in convincing the district court judge that even though defendant had this extreme criminal history, a criminal history that the district court observed was, and I quote, horrendous, defendant's counsel convinced the district court to vary down one criminal history category during his sentencing presentation. So to suggest that that was ineffective, the record doesn't bear that out. But to turn to Your Honor's question about the applicable law, the law that defendant's counsel here cites is the law that defense counsel at the time knew was applicable. All those cases were decided in the government's favor, but looking at the actual reasoning is important as well, and we believe that this is a relatively straightforward matter of statutory interpretation. As the court well knows, undefined terms in the sentencing guidelines, much like undefined terms in statutes, are given their plain meaning under the rules of statutory interpretation. So the term counterfeit substance isn't defined under Section 4B1.2, and so therefore should be given its plain definition, unless that would lead to unreasonable or impracticable results. Here we don't believe that there's a credible argument that defining counterfeit plainly as meaning made an imitation with intent to deceive would lead to illogical results in any way. In fact, this court didn't think so in La Alvega when it observed, and a panel of this court observed that although controlled substances was a term of art, counterfeit, the word counterfeit and the term counterfeit substances, had a, and I quote, a normal everyday meaning that we all understand. So there's a distinction between controlled substances, which was a term of art, and counterfeit substance. The word counterfeit has a plain meaning. When I say that, you know, the overwhelming law and the other four or five other circuits that looked at this were dealing with counterfeit, and here the Section 11.355 has the in lieu of language, which is not quite the same as that which was looked at. At least one of the other statutes had similar in lieu of language, Your Honor. I'm forgetting the name of the statute. I believe it might have been the case. It might have been Mills, but I'm forgetting the exact name of the case. But I think that that is respectfully a distinction without a difference because all of those statutes criminalized the same action, which was selling a substance, such as aspirin in this case, instead of selling a narcotic. And importantly, the plain meaning of counterfeit is consistent with the purpose of the career offender guidelines, which is an important point, Your Honor. The purpose of the career offender guidelines is to punish repeat offenders of violent crimes and narcotics offenses. Defendant's suggestion that the CSA's definition should solely be imported would leave us in a situation where manufacturers and distributors of mislabeled pharmaceuticals would be punished more harshly than persons who sell imitation narcotics. That's not a situation that I believe the Sentencing Commission would have envisioned, and it's also not borne out by the statutory construction. Thank you. We've taken over your time. You have two minutes. I'd like to have you address prejudice. Wouldn't this court have to decide that this does not qualify as a predicate offense in order to determine that the outcome would have been different? Yes, Your Honor. This case turns on whether these California convictions qualify as career offender designations, career offender predicate offenses. If they don't qualify, then there's no prejudice. That has to be decided here. So you're expecting that to be decided here. Yes, we are, Your Honor. I want to try and address five points the government made. One is that we're not looking for reasons. We're not looking for reasons to affirm it. It's de novo review. So the legal questions decided de novo. As far as it being a strategic decision by defense counsel, Judge Settle, you asked about how the record was developed in the 2255. The government never mentioned below, before the district court and the habeas proceedings, that this was a strategic decision. They relied solely on the conclusion that has not been reached in this circuit, that 11355 does qualify as a counterfeit substance offense. They relied on that assumption as a matter of law to say that there was no merit to the argument. So they never raised it as a strategic point, and therefore the district judge never took evidence on that question. And also, the government said that trial counsel was aware of this case law against him. We think that's unclear. The point is the pre-plea report advised him that that case law was out there. Either counsel didn't review those cases and just took the plea pre-report's word for it and then didn't raise the issue, or he reviewed those cases and stipulated anyway, even though it was an undecided issue. Also, the government says there's no stipulation. If you look at paragraph 12 of the plea agreement, it says the word stipulate. They stipulated to the career offender designation. I see I'm over my time. Thank you. Thank you. We thank both counsel for a very good argument and the cases submitted.
judges: Fernandez, Bea, Settle